# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA     *

    V.     *     Cr. No. GLR-19-435

COREY SCOTT, *ET AL.*     *

    **Defendant**     *
    *
**For: COREY SCOTT**     *

## MEMORANDUM IN AID OF SENTENCING

Defendant, Corey Scott, hereby respectfully submits this memorandum in aid of sentencing in his case and states:

## INTRODUCTION

Before the Court is the decision for an appropriate, but not greater than the Court deems necessary, sentence for Mr. Scott. The defendant has admitted his guilt and taken responsibility for possessing a weapon, and displaying it, as a prohibited person. Although the sentencing guidelines are not mandatory, they must be calculated accurately as a starting point for sentencing. The parties disagree on the application of USSG sec. 2K2.1(a)(4), specifically whether Mr. Scott's prior Maryland State conviction for possessing a handgun in relation to a drug trafficking offense is a qualifying conviction to raise his base offense level from 14 to 20 and thereby nearly double his guideline range from 24-30 months to 46-57 months. The Government submits that a 52 month sentence is appropriate, regardless of the ultimate guideline range. The defense submits that a sentence within the proper guideline range of 24 to 30 months accomplishes the goals of sentencing under 18 U.S.C. sec 3553.

1

The Government's guideline argument fails to follow the directives of the Supreme Court in the area of a statute's divisibility and therefore it cannot show that the relevant State statute is in fact divisible for our purposes.   Absent proof that a statute is divisible, the 'categorical approach' applies and because Mr. Scott's prior conviction could have been related to a drug conspiracy, offense level 14 is the proper base level.

Further, even the modified categorical documents provided by the Government do not establish that the drug trafficking crime related to Mr. Scott's weapon possession charge was drug distribution as opposed to a drug conspiracy - the statement of facts from the plea colloquy form the foundation for either crime.   The Government simply cannot meet its burden to show the Maryland statute is divisible and, therefore, cannot meet its similar burden to show that the six level base offense level increase applies here.

Equally importantly, the Government provides a literal snapshot of the events surrounding Mr. Scott's displaying a weapon.   That snapshot is an incomplete description of the facts in this case   The Government has not provided to the Court the rest of the events from that morning in May, 2019.   As the various videos that will be presented at sentencing, videos provided to the defense by the Government, show, Mr. Scott was suing the gun to *prevent* more violence and to protect himself and his friends from further assaults.

# LEGAL ARGUMENT ON GUIDELINES ISSUE

1. The categorical approach alone applies in determining whether Mr. Scott's prior conviction is a "controlled substance offense"[1]

USSG sec. 2K2.1(a)(4) provides that the defendant's base offense level is 20 if "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." If neither condition applies, the base offense level is 14. USSG sec. 2K2.1(a)(6). The term "controlled substance offense" is defined in USSG sec. 4B1.2(b) and Application Note 1 to that section. See App. Note 1 to USSG sec. 2K2.1. The Court is undoubtedly quite familiar with the 4B2.1(b) definition, which requires that the conviction involve the "manufacture, import, export, distribution, or dispensing of a controlled substance" or possessing controlled substances with the intent to "manufacture, import, export,

---

[1] As a definitional matter, even the categorical approach need not be applied here. Mr. Scott pled guilty to a gun possession charge, the essence of which is the possession of a weapon. Such a conviction is not a controlled substance offense by definition. His possession was in "relation to a drug trafficking offense" but USSG sec . 4B1.2(b) does not include in the definition of "controlled substance offense" offenses that are "related to" controlled substance offenses. Although the Government cites an unpublished Fourth circuit case, which cannot be used as precedent, to suggest that the commentary can expand the test of a sentencing guideline, that position is inconsistent with published case law. The Sentencing Commission has no power to "expand" this text via application notes in the commentary. *United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016) Indeed, in *Stinson v. United States*, 508 U.S. 36, 42 (1993), the Supreme Court explained that commentary may "interpret [a] guideline or explain how it is to be applied[;]". However, commentary cannot "add" to a definition in the text of the guidelines because commentary has no "independent" force. *United States v. Rollins*, 836 F.3d 737, 742 (7th Cir. 2016) ("In short, the application notes are *interpretations* of, not *additions to* the Guidelines themselves; an application note has no *independent* force. Accordingly, the list of qualifying crimes in application note 1 to § 4B1.2 is enforceable only as an interpretation of the definition of the term "crime of violence" in the guideline itself."). Nevertheless, the defense presents responses to the Government's arguments on categorical versus modified approach because the Government's position is inconsistent with current Supreme Court and Fourth Circuit law.

distribution, or dispense." The parties agree that if Mr. Scott's prior conviction was for a drug conspiracy, it does not qualify as a controlled substance offense.

The parties diverge on whether the Court is limited to the categorical approach or is permitted under Supreme Court and Fourth Circuit law to look at underlying State documents when assessing Mr. Scott's prior conviction for possess of a handgun in relation to a drug trafficking offense. See Md. Code Ann., CR sec. 5-621. Although there is no dispute that a "modified categorical approach" only applies where an underlying State statute is divisible, the Government claims that because the Maryland criminal statute contains the word "or", it is therefore divisible. Under all current law, the Government is incorrect and the statute at issue is not divisible.

In determining whether a conviction qualifies as a "controlled substance offense," sentencing courts must employ the categorical approach. *See Descamps v. United States*, 570 U.S. 254 (2013); *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013); *see also United States v. Dozier*, 848 F.3d 180, 183 (4th Cir. 2017) (applying categorical approach to §4B1.2 "controlled substance offense" definition). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "controlled substance offense" *Descamps*, 261 (citation omitted); *Royal*, 731 F.3d at 341-42. In addition, under the categorical approach, a prior offense is only a "controlled substance offense" if all the criminal conduct covered by a statute – "including the most innocent conduct" – matches or is narrower than the "controlled substance offense" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not

constitute a "controlled substance offense," then the statute categorically fails to qualify as a controlled substance offense for guideline purposes.

For the limited purpose of "help[ing to] implement the categorical approach," in a "narrow range of cases," however, a federal sentencing court may look beyond the legal definition of the offense to a small list of judicial documents (known as *Shepard*-authorized documents) to determine whether the defendant pleaded guilty to a "controlled substance offense." *Descamps*, 570 U.S. at 261, 262.[2] This approach, known as the modified categorical approach, is also driven by the elements.

In *Descamps*, the Supreme Court clarified that federal sentencing courts "may apply the modified categorical approach only if the state crime at issue is divisible." *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) (citing *Descamps,* 570 U.S. at 260). An offense is divisible if it has alternative elements – some which constitute a "controlled substance offense" and some which do not. *Omargharib*, 775 F.3d at 197-98 (citing *Descamps*, 570 U.S. at 261). If a statute is divisible, a federal sentencing court may review the *Shepard*-authorized documents only "to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 262.

2. The presence of the word "or" in the State definition of a "drug trafficking offense" *per se* does not make the statute divisible

To be clear, merely because an offense is defined by multiple disjunctive phrases separated by the word "or" "does not automatically render the crime divisible."

---

[2] These documents include the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, a judge's factual findings in a bench trial, and jury instructions. *Shepard v. United States*, 544 U.S. 13, 20, 26 (2005).

*Omargharib*, 775 F.3d at 198 (citing *Royal*, 731 F.3d at 341-42); *see also Rendon v. Holder*, 764 F.3d 1077, 1086-87 (9th Cir. 2014) (reasoning that when a state criminal law "is written in the disjunctive . . . , that fact alone cannot end the divisibility inquiry"). Rather, "a crime is divisible under *Descamps* only if it is defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime). Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." *Omargharib*, 775 F.3d at 198-99 (internal quotation marks and citations omitted). *See also Mathis v. United States,* 136 S. Ct. 2243, 2251-55 (2016) (same). Only when a statute is divisible with alternative elements – not alternative means – does the modified categorical approach apply.

3. Maryland does not require a jury to distinguish between a drug conspiracy and a substantive drug offense in convicting a defendant under CR 5-621

Pattern jury instructions for an offense will often clarify whether a statute's terms are means versus elements. *United States v. Gardner,* 823 F.3d 793, 802 (4th Cir. 2016). The Fourth Circuit's decision in *Royal* illustrates this point well. In *Royal*, at issue was whether the defendant's prior Maryland second degree assault conviction qualified as an ACCA "violent felony." Although second degree assault under Maryland law is defined as requiring either "offensive physical contact" or "physical harm," the Fourth Circuit found that these phrases were "alternative means of satisfying a single element" rather than alternative elements. *Royal*, 731 F.3d at 341. The Court relied on the Maryland second degree assault pattern jury instructions to conclude as such. *Id.* The Court explained that "Maryland juries are not instructed that they must agree 'unanimously and beyond a reasonable doubt' on whether the defendant caused either 'offensive physical

contact' or 'physical harm' to the victim; rather, it is enough that each juror agree only that one of the two occurred, without settling on which." *Id.* Therefore, the Court found that Maryland second degree assault is an indivisible offense with alternative means – not alternative elements that trigger the modified categorical approach. *Id.*

Likewise, in *Omargharib*, the Fourth Circuit held that Virginia grand larceny is indivisible, even though Virginia law defines the offense as a "wrongful *or* fraudulent taking." 775 F.3d at 198 (emphasis added). The Court explained that "Virginia juries are not instructed to agree 'unanimously and beyond a reasonable doubt' on whether defendants charged with larceny took property 'wrongfully' or 'fraudulently.' Rather, as in *Royal*, it is enough for a larceny conviction that each juror agrees only that either a 'wrongful or fraudulent' taking occurred, without settling on which." *Id.* The Court heavily relied on the Virginia pattern jury instruction to conclude as such: "The model jury instruction does not tell the jury to distinguish between wrongful and fraudulent takings . . . . rather, it only requires a finding of a taking 'without the consent of the owner.'" *Id.* (citing 2-36 Virginia Model Jury Instructions – Criminal G36.100 (2014)). Hence, the Court concluded that "wrongful or fraudulent takings are alternative means of committing larceny, not alternative elements." *Id.* at 200. In turn, the Court held that Virginia larceny is indivisible as a matter of law, and the modified categorical approach had no role to play. *Id.*

*Royal* applies here and resolves the matter; based on the Maryland jury instruction, the modified categorical approach cannot be used in Mr. Scott's case. The Maryland pattern jury instruction for CR 5-621 is attached hereto as Exhibit A. Therein, the jury is not required to find unanimously which of the two definitions of "drug trafficking

7

offense" applies in order to find a defendant guilty of possessing a weapon in relation to a drug trafficking crime. The instruction tells the jury:

> The defendant is charged with the crime of possessing a firearm during, and in relation to, a drug trafficking crime. In this case, the alleged drug trafficking crime[s] [is] [are] (drug trafficking crime[s]). You may not consider the crime of possessing a firearm during, and in relation to, a drug trafficking crime, unless you have found the defendant guilty of (drug trafficking crime). If your verdict on [that] [those] charge[s] is not guilty, you must find the defendant not guilty of possession of a firearm in the commission of a drug trafficking crime. If your verdict is guilty of (drug trafficking crime), you will continue to consider whether the defendant possessed a firearm in connection with the drug trafficking crime. In order to convict the defendant, the State must prove, in addition to the drug trafficking crime: (1) that the defendant possessed a firearm during the crime; and (2) that there was a connection between the defendant's possession of the firearm and the crime of (drug trafficking crime).

Thus, the jury is <u>not</u> told that it must find which "drug trafficking crime" to which the defendant possessed a firearm in relation. As a result, as in *Royal*, "Maryland juries are not instructed that they must agree unanimously and beyond a reasonable doubt on whether the defendant" had the weapon in relation to either a conspiracy or a drug distribution offense. As the Court held in *Royal*, therefore, the Maryland drug trafficking definition "is an indivisible offense with alternative means- not alternative elements that trigger the modified categorical approach.: *Royal*, at 341.

A "statute is indivisible when 'the jury need not agree on anything past the fact that the statute was violated.'" *Fuentes*, at 498, quoting *Rendon v. Holder,* 764 F.3d 1077, 1085 (9th Cir.2014). Thus,"any statutory phrase that — explicitly or implicitly — refers to multiple, alternative means of commission must still be regarded as indivisible if the jurors need not agree on which method of committing the offense the defendant used." *Id.* It is therefore "[o]nly when [the] law requires that in order to convict the defendant the jury must unanimously agree that he committed a particular substantive offense contained

within the disjunctively worded statute are we able to conclude that the statute contains alternative *elements* and not alternative *means"* *Id*., (emphasis in original). A Maryland jury is not so instructed and not so required.

Whether the underlying drug trafficking offense is a conspiracy or a drug sale is irrelevant to a conviction for possessing a weapon in relation to a drug trafficking offense. Participation in a drug conspiracy or a drug distribution are just means by which one can be convicted of possession of a weapon in relation to a drug offense. As long as the jury finds *a* drug offense, it matters not *which* drug offense. Section 5-621 is not divisible.[3]

4. Even if a modified categorical approach were used, Mr. Scott's prior conviction is not a "controlled substance offense" under Fourth Circuit law

For the limited purpose of "help[ing] to implement the categorical approach," in a "narrow range of cases," a federal sentencing court may look at a small list of judicial documents (authorized under *Shepard v. United States,* 544 U.S. 13, 26 (2005)) to determine whether the defendant "necessarily" pled guilty to an offense that qualifies as a "crime of violence." *Descamps v. United States*, 570 U.S. 254, 261, 262. This approach, known as the modified categorical approach, is also driven by the elements.

In *Descamps,* the Supreme Court clarified that a federal court may apply the modified categorical approach only if the relevant crime at issue is divisible. *Id.* at 260. An offense is divisible if it has alternative elements, and thus creates multiple crimes – some which constitute a "crime of violence" and some which do not. *Id.* at 260-61. If a statute is divisible, a federal sentencing court may review *Shepard* documents only to

---

[3] Further confirmation that 5-621 is not divisible is found in the fact that there are no separate punishments for committing the weapon possession crime in relation to a drug conspiracy or a drug sale. Although the Government is correct that if these offenses were themselves charged they would have different punishments and labels, such is not the case here.

determine "which of the statute's alternative elements" necessarily formed the basis of the defendant's conviction. *Id.* at 262.[4] In this way, the modified categorical approach "acts not as an exception [to the categorical approach] but instead as a tool. It retains the categorical approach's central feature: a focus on the elements rather than the facts, of a crime." *Id.* at 263.

And to be clear, under the modified categorical approach, a court cannot lawfully make a "controlled substance offense" finding unless the *Shepard* documents establish with "certainty" that the defendant "necessarily" pled guilty to elements constituting a "controlled substance offense." *Shepard*, 544 U.S. at 21-22, 23. "[P]lausibility or even likelihood" that the defendant pled guilty to elements constituting a "crime of violence" will not suffice. *United States v. Clay*, 627 F.3d 959, 967 (4th Cir. 2010). This "demand for certainty" avoids "evidentiary inquiries into the factual basis for the conviction" that the categorical framework forbids. *Shepard*, 544 U.S. at 21. <u>This stringent standard comports with "[t]he point of the categorical inquiry" which "is not to determine whether the defendant's conduct *could* support a conviction for a crime of violence, but to determine whether the defendant was *in fact convicted* of a crime that qualifies as a crime of violence</u>**.**" *Fuertes*, 805 F.3d at 498. Although these cases addressed the definition of a "crime of violence", they apply with equal force in determining whether a prior offense was a "controlled substance offense" and therefore the Court must find that Mr. Scott was in fact convicted of a controlled substance offense in Maryland State court.

---

[4] These documents include the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant, a judge's factual findings in a bench trial, jury instructions, and comparable judicial records. *Shepard*, 544 U.S. at 13, 20, 26.

Under this demand for certainty, when the *Shepard* documents do not establish the elements to which a defendant "necessarily" pled guilty, the court must assume that the defendant pled guilty to the "least serious" of the disjunctive elements of the statute. *United States v. Chapman,* 666 F.3d 220, 227 (4th Cir. 2012). "[W]hen a defendant pleads guilty to a formal charge in the indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct" unless *Shepard* documents conclusively establish otherwise. *Chapman,* 666 F.3d at 227-28. See *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011)(*en banc*) citing *Valansi v. Ashcroft,* 278 F.3d 203, 214-17 (3d Cir.2002) (rejecting assertion that defendant's guilty plea to indictment charging embezzlement with "intent to injure and defraud" admitted both states of mind where intent to do either was sufficient to sustain conviction).

And if the least serious of the disjunctive elements is broader than the guideline definition of "controlled substance offense", then the offense categorically fails to constitute a "controlled substance offense" and cannot support a six level increase under USSG sec. 2K2.1(a)(4).

Further, the State documents must conclusively show that the defendant pled to one particular aspect of a statute with an "or" in it. *United States v. Mathis*, 136 S.Ct. 2243, 2257 (2106) requires no less: "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime. Of course, such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy '*Taylo*r's demand for certainty' when determining whether a

defendant was convicted of a generic offense." The documents provided by the Government herein do not meet the standard demanded by *Taylor* and *Mathis*.[5]

The documents provided here by the Government do not establish that Mr. Scott "necessarily" pled guilty to the substance drug offense part of the "drug trafficking offense" definition. As the Government quoted in its sentencing letter, at pages 6-7, the facts set forth by the State prosecutor establish <u>both</u> a conspiracy to distribute drugs and a substantive offense. The conspiracy is plainly set out by the facts that Mr. Scott was "standing together" with his co-defendant where drugs were sold, Mr. Scott would obtain drugs from a "wall in the back room" while his co-defendant "had been acting as a lookout." The facts asserted establish a conspiracy to sell drugs - Mr. Scott and his co-defendant working in concert with different roles and one goal. And, "when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, the rule is that the defendant admits to the least serious of the disjunctive statutory conduct." *Chapman*, at 228.

### RELEVANT ADDITIONAL FACTS

Because the underlying statute is indivisible, his prior weapons conviction is not a controlled substance offense. Even looking at the underlying documents does not establish conclusively that Mr. Scott pled guilty to the substantive portion of the drug trafficking definition. Thus, he begins at a base offense level of 14, gets a four level increase for brandishing the weapon towards others and then receives three levels off for

---

[5] The underlying documents are only to be used to determine conclusively what crime to which the defendant pled guilty. "How a given defendant actually perpetrated the crime—what we have referred to as the `underlying brute facts or means' of commission—makes no difference…" *Mathis*, at 2251. See also *United States v. Kennedy*, 881 F.3d 14, 24 (1st Cir. 2018)("the record to which we are allowed to look does not plainly show that Kennedy pled guilty to that form of the offense.") Neither do the documents in Scott's underlying State case.

his prompt acceptance of responsibility. His final level is therefore 15 and he is in Criminal History Category III, which yields a advisory guideline range of 24 to 30 months. A sentence at the low end of the guideline range is appropriate in light of the overall facts of this case.

The Government included a snapshot of Mr. Scott brandishing the weapon, ECF 28 at p. 9, that shows the defendant holding a gun. What the Government did not provide to the Court are the events, captured on video, of the events prior to this particular snapshot. Those facts show that Mr. Scott was actually employing the weapon to protect himself and his friends and attempt to forestall any additional violence. The weapon was employed defensively not, as the Government suggests, as some random act of violence.

This event begins around 1:30 a.m. on May 4, 2019, not on the street in the Government photo, but up the street at a convenience store called Natural Choice Deli ("the Deli") located at 413 East Baltimore Street, at the corner of East Baltimore and Custom House Avenue. The Deli is about 300 feet from where Mr. Scott is seen on the Government's snapshot. A fight develops at the Deli between Mr. Scott's friend and another man (referred to herein as Fighter #1). The fight is significant enough that the police are called. Even despite the presence of several police officers, the fight continues, as is seen on the video. Fighter #1 is identified as wearing a dark shirt and a light gray sweatshirt tied around his waist. Mr. Scott was not involved personally in the fight.

Mr. Scott and his two friends are separated from Fighter #1 and his friends and Scott walked south on Custom House Avenue to get away from the violence. Unfortunately,

Fighter #1 was not finished fighting and followed Scott and his friends. As Scott is walking down the street, Fighter #1 comes to stand in front of Scott. Two persons also run at Scott at the same time Fighter #1 confronts Scott's group. It is only when confronted with the same person(s) who were involved in the prior assault that Scott takes the gun out of his pocket. The Government states that by brandishing the gun, Scott caused three persons to flee; <u>these are the same three persons who had come towards Scott in an aggressive manner having just been involved in a serious fight with Scott's friends.</u> The Government's photo only shows the defendant after the purported assailants dispersed, it does not show the reason the gun was displayed. A video of Fighter #1 as well as Scott's walking away down Custom House Avenue will be played for the Court at sentencing.[6]

Unquestionably, this defendant was not permitted to possess a weapon for any purpose based on his prior convictions. In this particular instance, for which he has received a four level increase in his offense level, defendant avers that the circumstances of his possession and displaying this weapon are relevant to the Court's assessment of punishment for this weapon possession. At a minimum, the fact that Scott was threatened before exposing the gun and used it only to avoid more violence mitigates his crime of possessing this weapon.

In addition, Mr. Scott has a life outside his criminal history. He has two daughters, one age 19 and the second age 11. The latter child he fathered with his long time girlfriend Shawday Robinson. Ms. Robinson has known Mr. Scott for 10 years and has stuck with him through his terms in jail. Attached hereto as Exhibit B is a letter from

---

[6] Unfortunately, defense counsel lacks the software and technology to make copies of the videos provided in discovery in order to give a copy to the Court in advance of sentencing.

Ms. Robinson in which she describes Mr. Scott as a "decent person at the core" who has made mistakes, is "incredibly remorseful" and, she agrees that Scott should not "get off without punishment." Ms. Robinson then acknowledges the "power [the Court] yield[s] with regard to the future of this man."

                          Respectfully submitted,

                          _____/s/_____
                          Richard Bardos, Of Counsel
                          Schulman, Hershfield & Gilden, P.A.
                          1 East Pratt Street, 9th Floor
                          Baltimore, Maryland 21202
                          (410) 332 0850

## **CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that on this 6th of March, 2020, a copy of the foregoing Memorandum in Aid of Sentencing was served electronically by email to: Office of the United States Attorney, 36 South Charles Street, Fourth Floor, Baltimore, Maryland 21201.

        _____/s/_____
        Richard Bardos